UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHARLES B. GILL, SR.,

          Plaintiff,

v.                                            Case No. 25-cv-757-pp

INMATE CALL SOLUTIONS, *et al.*,

          Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A, DISMISSING CASE FOR FAILURE TO STATE A CLAIM AND IMPOSING PLAINTIFF'S THIRD STRIKE UNDER 28 U.S.C. §1915(G)**

Plaintiff Charles B. Gill, Sr., who is incarcerated at Oshkosh Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983 alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, screens his complaint, dkt. no. 1, dismisses the case for failure to state a claim and imposes the plaintiff's third "strike" under 28 U.S.C. §1915(g).

**I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the

plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On June 16, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $14.52. Dkt. No. 6. The court received that fee on June 24, 2025. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II.     Screening the Complaint

### A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The complaint names as defendants Inmate Call Solutions (IC Solutions) and Wisconsin Department of Corrections (DOC) Secretary Jared Hoy. Dkt. No. 1 at ¶¶5–6. The plaintiff sues the defendants in their individual and official capacities. Id. at ¶7.

The plaintiff alleges that he represented himself in a state criminal case in Outagamie County, with attorney Danielle Gorsuch assisting as standby

3
Case 2:25-cv-00757-PP   Filed 07/29/25   Page 3 of 16   Document 7

counsel. Id. at ¶8. He says that in March 2025, when he had about a year left on his sentence, he attempted to call Gorsuch for advice on submitting a motion for early release. Id. at ¶9. He says that when he attempted to call Gorsuch, he heard a recorded message stating, "Please stay on the phone as we setup [*sic*] your call." Id. The plaintiff states that since March 10, 2025, he has received this message any time he attempts to make a call. Id. He adds that he sometimes receives a second message that states, "Please enter your pin number followed by the pound sign." Id. The call then repeats the first message, pauses for a few minutes, then states, "We're sorry, your call cannot be completed at this time." Id. at ¶¶11–12.

The plaintiff alleges that as of April 13, 2025, and continuing until at least the date he submitted his complaint, the IC Solutions phone system will not allow him to call his family, friends or Attorney Gorsuch at her office or through the Outagamie County public defender's office. Id. at ¶13. He says that on April 19 and 26, 2025, he submitted requests about the phone issues, but he has not received any response. Id. at ¶¶14–15. The plaintiff says that on April 28, 2025, Oshkosh sent a message from IC Solutions to all incarcerated persons through their institution tablets about the "problems of not being able to call anyone." Id. at ¶16. He alleges that the next day, April 29, 2025, his fiancée sent him a picture on his tablet of the same message about the phone errors from IC Solutions, which she received via email in her home in New York. Id. at ¶17.

The plaintiff attached a copy of the message he and his fiancée received from IC Solutions. Dkt. No. 1-1. The message suggests that an "increased call

volume" from incarcerated persons to loved ones "has caused unexpected challenges . . . most often during peak calling hours." Id. IC Solutions states that it is "work[ing] through these challenges [to] improve [users'] overall experience" and will implement "hardware and software changes" to improve performance by this summer. Id. The message suggests that users "place calls during off-peak hours as much as possible—before 5:00 PM or after 9:00 PM." Id.

The plaintiff says that on Saturday, May 3, 2025, he was able to make a call to Addie Costello, a reporter for "the Wisconsin Watch" and Wisconsin Public Radio. Dkt. No. 1 at ¶18. He told Costello about the issues incarcerated persons were having with IC Solutions and the DOC phone system. Id. He says that on May 11, 2025, the Milwaukee Journal Sentinel published an article written by Costello about the phone issues. Id. at ¶19. The plaintiff says that Costello spoke with twenty-five people about the issue, including the plaintiff, other incarcerated persons and non-incarcerated persons who had experienced the same issues attempting to call loved ones who are incarcerated. Id. The article also featured a response from a spokesperson for the DOC, who agreed that "[t]he quality of service that IC Solutions is providing is not acceptable to the department of corrections. If reliability and customer service do not improve, the department will be forced to reevaluate our contract."[1] Id. at ¶20.

---

[1] The court found an online version of this article. See Addie Costello, *'It's been a living hell': Wisconsin prison phone failures leave families disconnected*, MILWAUKEE JOURNAL SENTINEL (May 9, 2025), https://www.jsonline.com/story/news/local/wisconsin/2025/05/09/wisconsin-prison-phone-failures-leave-families-disconnected/83516947007/

5

The plaintiff claims that IC Solutions violated his and all incarcerated persons' First Amendment rights "to 'freely and efficiently communicate' with their attorneys." Id. at ¶21. He claims that IC Solutions also violated all incarcerated persons' First Amendment rights "to Freedom of Speech with family and friends." Id. at ¶22. He asserts that DOC Secretary Hoy violated all incarcerated persons' First Amendment rights because Hoy knew about the IC Solutions phone system issues, failed to resolve the issue so that incarcerated persons could communicate with their family, friends and attorneys "and placed the blame on IC Solutions." Id. at ¶23.

The plaintiff seeks a declaration that the defendants violated his and all incarcerated persons' First Amendment rights. Id. at ¶25. He also seeks $200 million in compensatory and punitive damages against IC Solutions and $75,000 from Secretary Hoy. Id. at ¶¶26–27.

C. Analysis

The first question the court must answer is whether the plaintiff may bring a civil rights claim under §1983 against IC Solutions. A plaintiff may bring a §1983 claim only against state actors—persons who were acting under the color of state law when they allegedly violated the plaintiff's rights. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970). Although it is not a person, a private corporation like IC Solutions may be considered a state actor where it has contracted to provide essential government services—such as telecommunication for persons incarcerated in state prisons—and may be held liable if "the constitutional violation was caused by an unconstitutional policy

or custom of the corporation." Shields v. Ill. Dep't of Corr., 746 F.3d 782, 789 (7th Cir. 2014). That means that to sue IC Solutions under §1983, the plaintiff must allege "that his injury was caused by a [corporation] policy, custom, or practice of deliberate indifference . . . or a series of bad acts that together raise the inference of such a policy." Id. at 796 (citing Woodward v. Corr. Med. Servs. of Ill., Inc., 368 F.3d 917, 927 (7th Cir. 2004)).

The plaintiff alleges that IC Solutions is an independent contractor that provides phone services for the DOC. He has not described the specifics of this contract, but he is not required to do so at this stage of his case. See Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 830 (7th Cir. 2009). The complaint also alleges that IC Solutions is aware of the issues with phone services at Oshkosh and has failed to remedy the issue, though it has informed affected users that it is implementing changes and expects to upgrade its system by this summer. That suggests that IC Solutions may have resolved this issue since the plaintiff filed his complaint in May 2025. But even so, the complaint sufficiently alleges that the alleged violation of his First Amendment rights occurred because of a custom, practice or series of acts or inaction by IC Solutions. The court finds, for purposes of this decision only, that IC Solutions is a proper defendant.

The plaintiff asserts that IC Solutions' faulty phone system violated his First Amendment rights in two ways—by preventing him from "freely and efficiently communicating" with his attorney and by denying him his right to "freedom of speech" with his family and friends. Incarcerated persons do not

7

Case 2:25-cv-00757-PP    Filed 07/29/25    Page 7 of 16    Document 7

have a right to unlimited telephone use, regardless of who they seek to call. See Boriboune v. Litscher, 91 F. App'x 498, 499 (7th Cir. 2003) ("[T]hough prisoners have a right under the First Amendment to communicate with others outside the prison, we have expressed doubt that this amounts to an unqualified right for a prisoner to have access to a telephone.") (internal citations omitted)). The question is whether the plaintiff's allegations about the problems with the prison's phone system, in relation to his calls to his attorney or his friends and family, state a valid claim under §1983.

Regarding the plaintiff's allegations related to calls to his attorney, there is no First Amendment right to "freely and efficiently communicate" with an attorney. See Lashbrook v. Hyatte, 758 F. App'x 539, 541 (7th Cir. 2019) ("[T]he First Amendment does not mandate 'unrestricted and unlimited private contacts' with counsel . . . ."). Incarcerated persons have a limited right "to consult with an attorney." Id. (citing Denius v. Dunlap, 209 F.3d 944, 954 (7th Cir. 2000)). Because the plaintiff was attempting to contact the attorney who assisted him as standby counsel in his criminal prosecution, his claim could involve the First and Sixth Amendments. Denius, 209 F.3d at 953–54 (citing DeLoach v. Bevers, 922 F.2d 618, 620 (10th Cir. 1990), and other cases).

But the complaint does not state a claim for violation of the plaintiff's right to consult an attorney under either amendment. As the court explained in another of the plaintiff's cases, there is no right for an incarcerated person "to call his attorney via telephone even though he has other options for communicating with counsel, such as through in-person visits, electronic

communications or writing letters." Gill v. Teigen, *et al.*, Case No. 23-cv-256, 2025 WL 1734726, at *13 (E.D. Wis. June 23, 2025). An incarcerated person may state a claim when "restrictions on [his] telephone privileges" prevent him from contacting his attorney "at all for several days." Id. (quoting Tucker v. Randall, 948 F.2d 388, 390 (7th Cir. 1991)). The plaintiff does not allege that he has been unable to contact Attorney Gorsuch at all or that the prison restricted or prohibited him from contacting her. Nor has he alleged that he was unable to write to Gorsuch, send her electronic communications, see her in person or otherwise communicate with her. The complaint alleges only that the plaintiff was unable to call Gorsuch or the public defender's office because of problems with the prison's phone system. The plaintiff insists that this problem occurred any time he tried calling anyone since March or April 2025. But the complaint contradicts that assertion and clarifies that the plaintiff was able to call Costello on a Saturday in May 2025. This suggests that, as the IC Solutions memorandum states, the issue was high call volume during peak calling hours in the evening and not a complete failure of the phone system. The plaintiff's inability to call Gorsuch during some parts of some days did not violate his rights under the First or Sixth Amendment.

  The plaintiff also has not alleged that he needed to talk to Gorsuch about an urgent matter in his pending criminal proceedings. He explains that Gorsuch was *standby counsel* in his concluded criminal case, and that he wanted her advice about a motion for early release that he planned to file himself. To the extent that the plaintiff is attempting to raise a claim that he

9

Case 2:25-cv-00757-PP Filed 07/29/25 Page 9 of 16 Document 7

was denied access to the courts, he has not stated a claim. To state a claim about the denial of access to the courts, an incarcerated person must allege that the actions of prison officials "prejudice[d] a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of confinement." Marshall v. Knight, 445 F.3d 965, 968 (7th Cir. 2006). The plaintiff must provide detail about "the underlying cause of action and its lost remedy . . . sufficient to give fair notice to a defendant." Christopher v. Harbury, 536 U.S. 403, 415 (2002). The plaintiff provides no detail about his motion for early release—which would not challenge his conviction, sentence or conditions of confinement but would ask only for early release because the plaintiff had completed three-quarters of his sentence. The plaintiff does not say whether he filed this motion, whether being unable to call Gorsuch deterred him from filing it or whether he suffered any prejudice because of the issues with the phone system. See In re Maxy, 674 F.3d 658, 660 (7th Cir. 2012) ("[T]o satisfactorily state a claim for an infringement of the right of access, prisoners must also allege an actual injury."). The plaintiff's brief reference to this putative motion does not provide a basis for a claim that he was denied access to the courts.

The plaintiff next contends that not being able to call his family and friends violated his rights. These allegations could be an attempt to state a claim for violation of his right to association, which is rooted in the Due Process Clause of the Fourteenth Amendment rather than the First Amendment. See Nigl v. Litscher, Case No. 17-CV-925, 2018 WL 1175165, at *3 (E.D. Wis. Mar. 6, 2018) (citing Roberts v. U.S. Jaycees, 468 U.S. 609, 617–

10
Case 2:25-cv-00757-PP   Filed 07/29/25   Page 10 of 16   Document 7

18 (1984); and Montgomery v. Stefaniak, 410 F.3d 933, 937 (7th Cir. 2005)). Under the Fourteenth Amendment, the plaintiff has a right "'to enter into and maintain certain intimate human relationships.'" Bilka v. Farrey, 447 F. App'x 742, 744 (7th Cir. 2011) (quoting Roberts, 468 U.S. at 617–18). But this right is not unlimited for incarcerated persons. Overton v. Bazzetta, 539 U.S. 126, 131 (2003). For example, the Seventh Circuit never has "recognized a constitutional right of incarcerated persons . . . to receive visits from romantic partners." Green v. Noble, Case No. 21-cv-615, 2022 WL 656877, at *5 (E.D. Wis. Mar. 4, 2022) (citing Nigl, 2018 WL 1175165, at *3). Similarly, it remains "'an open question' whether incarcerated persons have a constitutional right to visits with family members." Id. (citing Overton, 539 U.S. at 131–32; and Hohol v. Jess, 394 F. App'x 318, 319 (7th Cir. 2010)). As long as incarcerated persons retain avenues to "maintain their relationship," limitations on their contact with others does not violate their right to association. Bilka, 447 F. App'x at 744 (citing Overton, 539 U.S. at 135).

The plaintiff's allegations do not state a claim for violation of his right to association with his friends and family. The plaintiff alleges that since March or April 2025 (the complaint is ambiguous about when his calls ceased to go through), he has been unable to make phone calls to his friends and family. But he has not alleged that this was an intentional act of prison staff or the result of an Oshkosh or DOC policy. The plaintiff says that it is the result of a faulty phone system—a problem of which the DOC is aware and into which it is looking. More important, the plaintiff does not say he was unable to maintain

his relationships with his friends and family without being able to call them. Nor has he alleged that IC Solutions or Oshkosh staff prohibited him from having contact with his family and friends. For example, he says that on April 29, 2025, he received a message and a picture on his institutional tablet from his fiancée. This suggests he is able to receive electronic communications from persons outside the prison. And as the court has recounted, the plaintiff says that he was able to call Costello in May 2025, which suggests that he *could* call his family and friends but perhaps not during peak calling hours between 5:00 to 9:00 p.m., as the IC Solutions memorandum explains. Nor does the plaintiff allege that the prison restricted him from writing to his friends and family or seeing them for in-person visits at Oshkosh. The plaintiff may wish to place phone calls to his friends and family at will, but the Constitution does not grant him that right. His temporary, limited inability to call his friends and family during some hours of some days is an inconvenience and is unpleasant, but it does not state a claim under §1983.

The plaintiff also seeks to sue DOC Secretary Hoy for the issues with the phone system. The plaintiff has not alleged that Hoy was personally responsible for these issues or that he notified Hoy about the issues he experienced. He alleges that he filed "requests" about the phone issues, but he does not say to whom he sent these requests. The plaintiff generally alleges that Hoy was aware of the phone problems but failed to address them. Even if this single allegation were sufficient to establish Hoy's liability, see Burks v. Raemisch, 555 F.3d 592, 595–96 (7th Cir. 2009), the court has explained that the

complaint does not state a claim regarding the phone issues. That means the plaintiff cannot state a claim against Hoy for failing to address those same issues.

The plaintiff seeks to assert the rights of *all* incarcerated person in the DOC who were unable to make phone calls using IC Solutions' technology. But the plaintiff does not have standing to assert claims on behalf of other incarcerated persons. See Lewis v. Casey, 518 U.S. 343, 349–50 (1996); Massey v. Helman, 196 F.3d 727, 739–40 (7th Cir. 1999). The plaintiff may file lawsuits only on his own behalf and only for violations of his own rights.

Because the plaintiff has not stated a claim for violations of his federal rights, the court will dismiss his complaint. Although district courts generally permit civil plaintiffs at least one opportunity to amend their pleadings, the court need not do so "when 'it is *certain*' that amendment would be futile." See Fields v. Miller, Case No. 21-1419, 2022 WL 1011666, at *3 (7th Cir. Apr. 5, 2022) (citing Runnion *ex rel.* Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519–20 (7th Cir. 2015)). The plaintiff's complaint is thorough in its allegations of facts surrounding this claim. The court finds that amendment would be futile because additional allegations about these events would not provide a basis for a claim under §1983.

Finally, for analysis under 28 U.S.C. §1915(g) of the plaintiff's future filings, if any: this is the third time the court has dismissed one of the

plaintiff's cases as frivolous or for failure to state a claim.[2] This third "strike" will take effect when the court enters judgment in this case. Coleman v. Tollefson, 575 U.S. 532, 538–40 (2015).

Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the ground that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. §1915(g). The court advises the plaintiff the plaintiff that he is barred from proceeding without prepaying the full filing fee in any civil lawsuit he may file while he is a "prisoner" within the meaning of §1915(h) unless he is in imminent danger of serious physical injury. If the plaintiff files any new civil lawsuit without paying the entire $405 civil filing fee, the complaint must contain allegations sufficient to show that, at the time of filing the action, he is in imminent danger of serious physical injury. If the new complaint does not sufficiently allege imminent danger, the court will dismiss it without prejudice. The plaintiff then will have an opportunity to file a motion to reopen the case—accompanied by the entire civil filing fee—within twenty-eight days.

## III. Conclusion

The court **GRANTS** the plaintiff's motion for proceed without prepaying the filing fee. Dkt. No. 2.

---

[2] See Gill v. Woelfel, *et al.*, Case No. 23-cv-423 (dismissed Nov. 11, 2023, for failure to state a claim); Gill v. Buesgen, *et al.*, Case No. 24-cv-1126 (dismissed Nov. 7, 2024, for failure to state a claim).

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim. The court will enter judgment accordingly.

The court will document that the plaintiff has incurred his third "strike" under 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$335.48** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Oshkosh Correctional Institution, where the plaintiff is incarcerated.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **thirty days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline.

See Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion in *this court*. See Fed. R. App. P. 24(a)(1). The Court of Appeals may assess the plaintiff another "strike" if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **twenty-eight days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 29th day of July, 2025.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**